The Ohio and Mississippi Railway Company

*v.*

The People *ex rel.* The Attorney General.

*Filed at Springfield March 23, 1887.*

1. RAILROADS—*duty to keep track in repair, and to furnish facilities for business.* It is the duty of a railway company to keep its road in a reasonable state of repair and in a safe condition, and to so operate it as to afford adequate facilities for the transaction of such freight and passenger business as may be offered. But when the business of the road does not pay the current expenses, the court will not attempt to enforce the performance of this duty by *mandamus.*

2. MANDAMUS — *whether the proper remedy, generally.* The writ of *mandamus* will not be granted, in any case, where it is clear that it will prove unavailing, as, when the thing sought is physically impossible to be done, or when, from extrinsic causes, it has become so, or when performance, though not absolutely impossible, is, from any cause, not within the power of the defendant. Whenever it is apparent that the defendant is unable to perform the act sought, the writ will not be awarded.

3. SAME—*to compel a railway company to perform specific duties — and of the remedy when the company is unable to perform.* Mandamus is an appropriate remedy to compel a railway company to perform any specific duty which it owes to the public, as owner or operator of its road. It may be compelled to replace a part of its track which it has wrongfully taken up; also, to operate its road as a continuous line, to compel it to build a bridge, or to run daily trains.

4. But this remedy will not lie, in the absence of a statutory duty, to compel a railway company to increase the number of trains on its road, or to run daily a particular number of trains over its road.

5. And if a railway company becomes wholly unable to discharge the duties it owes to the public and which the law has imposed upon it, a proceeding in the nature of a *quo warranto* is the proper remedy, and not *mandamus*.

APPEAL from the Circuit Court of Sangamon county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. RAMSEY, MAXWELL & MATTHEWS, Messrs. MATHENY & MATHENY, and Messrs. POLLARD & WERNER, for the appellant.

Mr. GEORGE HUNT, Attorney General, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The Attorney General, on the 21st of August, 1886, filed a petition, in the name and on behalf of the People, in the circuit court of Sangamon county, against the Ohio and Mississippi Railway Company, praying that the company be compelled, by a peremptory writ of *mandamus*, to repair and improve, generally, a certain portion of its road, to be more particularly designated further on, and to increase the passenger trains thereon. The company filed an answer to the petition, to which the court sustained a demurrer, and the respondent declining to make other or further answer, the court thereupon entered an order awarding the writ, as prayed,— to reverse which, the present appeal is brought.

The petition shows that the appellant is the owner of, and since 1875 has been operating, a railroad for the transportation of freight and passengers, from Beardstown, in Cass county, this State, to Shawneetown, on the Ohio river, in Gallatin county, which is generally known as the Springfield Division of defendant's road. The grounds of complaint, as set forth in the petition, are, in substance, that the defendant has, for the space of six months last past, permitted its railroad to become out of repair, and remain in an unsafe and dangerous condition for the running of trains of passenger and freight cars thereon, and that it wholly neglects and

refuses to keep the same in repair and in a safe condition; that defendant also "neglects and refuses to run trains of cars for the carriage of freight and passengers on and over its road at such times and in such manner" as to accommodate persons living or doing business on the line of the road, and the public generally; that over certain specified portions of the road, it runs but one train a day each way, and that merely a mixed train, etc.

It appears from respondent's answer, that the line of road to which the petition relates, formerly constituted the Illinois Southeastern railway, and also the Pana, Springfield and Northwestern railroad; that the companies owning these two roads were consolidated, under the name of Illinois Southeastern Railway Company; that the same was afterwards, in 1874, sold and conveyed to John Bloodgood, under a decree of the Circuit Court of the United States for the Southern District of Illinois, whose title the defendant acquired through a number of *mesne* conveyances, on the 30th day of January, 1875; that since that time it has continuously owned and operated the said road in connection with its main line of road, which runs east and west between St. Louis and Cincinnati. It is further shown by the answer, and urged by way of defence, that this branch of its road has never paid running expenses, and that its former owner, the Springfield and Illinois Southeastern Railway Company, rendered itself wholly insolvent by its attempts to maintain and operate the same, and it is expressly charged, that although the respondent has diligently and economically managed and operated said line of road, it has not, at any time, yielded sufficient revenue to defray its operating expenses. Moreover, respondent embodies in its answer an exhibit showing the gross earnings, and running expenses, in separate columns, from the 30th of January, 1875, (the date of its purchase,) down to the 30th of June, 1886, from which it appears the running expenses, including necessary repairs, have exceeded its gross earnings

$411,135.82. It is also shown by the answer, that the respondent's main line of road is subject to a present mortgage indebtedness of more than $10,000,000, which existed at the time of its purchase of the branch road in question.

In the face of these undisputed facts, and the express allegation that the company has no funds with which to make the repairs and improvements required to put the road in proper condition, and to operate it as contemplated by this proceeding, and also in face of the further admitted fact that the company has no means by which it can raise such funds, the circuit court entered an order directing that a peremptory writ of *mandamus* issue against the company, commanding it "forthwith to place its * * * railroad in a good, safe and suitable condition for the running of trains of freight and passenger cars thereon, and to keep and maintain the same in such condition, and to place upon, and operate upon and over, the entire length of said railroad, a sufficient number of freight and passenger cars and trains to accommodate the public, and not less than two passenger trains daily in each direction."

In our judgment, there is no theory which finds any sanction, in law, on which this order and judgment can be sustained,—not because it does not sufficiently appear that the defendant is operating its road in violation of the duties which it owes to the public, for there can be no doubt of the duty of a railway company to keep its road in a reasonable state of repair, and in a safe condition. Nor is there any doubt of its duty to so operate it as to afford adequate facilities for the transaction of such business as may be offered it, or at least reasonably be expected. This is equally true with respect to passengers and freight. As to the extent or sufficiency of these facilities, including the number and frequency of trains, that is to be judged of and governed chiefly by the amount of business on the line of the road. The company, however, is given, as it should be, a very large discretion in determin-

ing all questions relating to the equipment and operation of its road,—hence courts, as a general rule, will not interfere with the management of railways in these respects, except where the act sought to be enforced is specific, and the right to its performance in the manner proposed is clear and undoubted.

Ordinarily, the true interests of railway companies, and the strict liabilities imposed on them as common carriers, are all that is necessary to protect the public against such abuses as are complained of in this case; but, as already stated, these incentives to duty have not attained the desired end, nor the usual result, in the present case. It is an admitted fact upon the record, that the road in question is greatly out of repair and is in an unsafe condition, and the conclusion is fully justified, that for the six months last past it has been operated, and is still being operated, without a proper regard to the safety of life or limb. The answer which the company makes to this, as we have seen, is, that it has neither the funds, nor the means of raising them, which are required to put the road in a safe condition. Now, while the matter thus set up in the answer no more exonerates the company from the duties which it owes the public, than the inability of one to pay his honest debts would relieve him from his legal liabilities to his creditors, yet it does show a conclusive reason why *mandamus* is not a proper remedy in the case, for no principle of law is better settled than that the writ should not be granted, in any case, where it is clear that it would prove unavailing,—as, where the act sought to be enforced is, from its very nature, physically impossible, or where, from extrinsic causes, it has become so, or where performance, though not absolutely impossible, is, from any cause, not within the power of the defendant. But whatever the ground may be, whenever it is apparent that the defendant is unable to perform the act sought to be thus enforced, the writ, as a general rule, will be denied. *People* v. *Chicago and Alton*

*Railroad Co.* 55 Ill. 95; *People* v. *Lieb*, 85 id. 484; *People* v. *Trustees*, 86 id. 613; *Cristman* v. *Peck*, 90 id. 150; *People* v. *Hatch*, 33 id. 9. It may be, that where the defendant has willfully and wrongfully put it out of his power to perform the required act, he will not be heard to interpose his want of power as a defence to the action; but this limitation upon the general rule, as above stated, has, in our opinion, no application to the present case.

Again, the requiring of the defendant "to put the road in a good, safe and suitable condition," etc., is so general, and involves so much discretion on the part of the defendant in respect to the details of the work, as to lead to difficulties and embarrassments in the enforcement of the order, and, to say the least of it, to make the remedy of doubtful propriety. Just what would be necessary to place the road in that condition, is a matter requiring skill and judgment, and one about which even railroad men might well differ; and hence, from the very nature of the duty enjoined, the defendant could not know, of a certainty, when the order of the court had been fully complied with. Moreover, in case of an alleged violation of the order, where an honest effort had been made to comply with the mandate of the writ, it would probably involve the investigation of a vast amount of detail, giving rise to conflicting opinions among witnesses, and thus throwing doubt and uncertainty over the whole subject,—all of which goes to show the inappropriateness of *mandamus* as a remedy in such a case. *United States* v. *Commissioners*, 5 Wall. 563; *Rex* v. *Oxford and Whitney Turnpike Road*, 12 A. & E. 427.

It is not pretended the difficulties here suggested afford a conclusive test, if, indeed, one at all, as to when the action will lie, for it is, without doubt, true, that there are many instances, in cases where the duty is clear and imperative, in which *mandamus* is held to lie, notwithstanding the thing required to be done involves the performance of a multiplicity

of acts requiring the exercise of judgment and discretion, on the part of the defendant, as to such details. Thus, *mandamus* has been held to be a proper remedy to compel a railway company to so grade its tracks as to make the crossings practically convenient and useful. (*Chicago and Northwestern Railway Co.* v. *People ex rel.* 56 Ill. 365.) Also, to compel a company to so construct its road across a stream as to not interfere with navigation. (*State* v. *N. E. Railroad Co.* 9 Rich. 247.) In any event, however, this feature of the case should be taken into consideration, in determining whether, in view of all the facts shown, the People have made out such a case as to entitle them to the relief prayed. It is conceded, to the fullest extent, that *mandamus* is an appropriate remedy to compel a railway company to perform any specific duty which it owes to the public as owner or operator of its road. Thus, it may be compelled to replace a part of its track which it has wrongfully taken up, (*King* v. *Severn Railroad Co.* 2 B. & A. 644,) also, to operate its road as a continuous line, (*Union Pacific Railroad Co.* v. *Hall*, 91 U. S. 343,) to compel it to build a bridge, (*People ex rel. Kimball* v. *Boston and Albany Railroad Co.* 70 N. Y. 569,) to compel it to run daily trains, (*In re Brunswick Railroad Co.* 1 P. & B. 667,) and also, where there is a statute expressly requiring it, to compel a company to stop at least two of its trains each day at a particular station. (*Commonwealth* v. *Railroad Co.* 103 Mass. 254.) Many of these cases, however, it will be found, are controlled by special statutory provisions. It is believed, however, no case can be found which, in the absence of a statutory requirement, has gone to the length of holding that a railway company may be compelled, by *mandamus*, to increase the number of trains on its road, or to run daily a particular number of trains over its road; and we are satisfied there is no common law authority for making such an order. Of course, where the charter of the company expressly requires that not less than a given number of trains shall be run daily, the

company may be compelled, by *mandamus*, to perform this, like any other specific duty enjoined by its charter or by other statutory provision. But even if this might be done on mere common law principles, we are clearly of opinion that the order in this case, requiring the defendant to run daily two passenger trains each way over its road, was wholly unwarranted by the circumstances. If the travel and other business on the road, with one passenger train each way daily, have failed to keep the road in repair and pay running expenses, as is clearly shown to be the fact, it is difficult to perceive upon what theory the company, in its embarrassed condition, can be required to incur the additional expense of two extra passenger trains. A company that runs a daily passenger train each way over a road which can not, with proper management, be made to keep up repairs and pay running expenses, certainly does fully as much as the law requires of it, so far as passenger trains are concerned. If it be claimed, as it seems to be, that the failure of the road to be self-sustaining is the result of the company's misconduct and breach of duty, such matter, if intended to be relied on, should have been set up by replication. Instead of this, the relator demurred to the answer, thereby admitting the truth of the answer as to all matters of fact well pleaded.

To summarize what, perhaps, already sufficiently appears, we are of opinion, that upon the admitted facts of this case the company is clearly guilty of a violation of its duty in not keeping its road in a proper state of repair and a safe condition, but that, under the circumstances and for the reasons heretofore stated, *mandamus* is not the proper remedy for the enforcement of such duty. If, as seems to be the case, the defendant is wholly unable to discharge the duties it owes to the public, and which the law has imposed upon it, a proceeding in the nature of a *quo warranto* is the proper remedy, and not *mandamus*. Should the company, by this means, be deprived of its franchises, if the road can be made self-sus-

taining, and pay something on the capital invested, doubtless another company would organize for the purpose of buying and operating it, and the advantages of the road, under a proper management, would be thus secured to the People. On the other hand, if the line of road is not capable, under any management, of being made self-sustaining, it simply shows there is no demand or necessity for the road, and the sooner, therefore, the State revokes the franchise, the better. A business that will not pay ought not to be followed, as it adds nothing to the wealth of those pursuing it, or of the State.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*