THE CITY OF BENTON HARBOR v. THE ST. JOSEPH & BENTON HARBOR STREET RAILWAY COMPANY.

*Mandamus—Impossibility of performance of duty—Street railways —Paving between rails and tracks.*

1. Where in a *mandamus* case no issue is asked by the relator, the statement of facts contained in the answer must be taken as true.

2. *Mandamus* will not lie to compel a street-railway company to

comply with the provisions of an ordinance requiring it to pave the street between its rails and tracks where it appears from its answer that, owing to the financial straits in which it is placed, it is impossible for its officers to borrow or otherwise raise the money to pay for such paving.[1]

*Mandamus.*    Argued October 23, 1894.    Denied November 7, 1894.

Relator applied for *mandamus* to compel respondent to pave certain streets between its rails and tracks, etc.    The facts are stated in the opinion.

*Charles N. Sears* (*Thomas O'Hara*, of counsel), for relator.

*W. C. Hicks* (*M. L. Howell*, of counsel), for respondent.

LONG, J.    This is an application for *mandamus* to compel the respondent company to pave between its rails and tracks, and to pave 12 inches outside its tracks, within a certain district in the city of Benton Harbor.

The respondent corporation was organized under the laws of this State in 1881, and in that year obtained a franchise from the village of Benton Harbor (now a city), and operated a horse railroad up to the year 1892. On April 26, 1889, the common council of the village of Benton Harbor passed an ordinance authorizing a double track in certain portions of the village, and requiring the respondent company to plank, macadamize, or gravel the space between the tracks and between the rails of each track, and to place guard planks or macadam on the outside of the outer rail of each track 12 inches in width, and to keep the whole in good repair.    This ordinance was accepted by the respondent company, and it claims that it was passed with the understanding that electric

---

[1] See *State v. Railway Co.*, 24 L. R. A. 564, and note, as to compelling the operation of a railroad by *mandamus*.

power might be used, but this fact does not appear in the ordinance. On June 5, 1891, the village of Benton Harbor became incorporated as a city, under that name. On December 12, 1891, the respondent company petitioned the city council to pass an ordinance authorizing and permitting it to substitute and use electricity as the motive power. The council, on that same evening, passed a resolution which provided that the company be granted a franchise to operate its present system by electricity, subject to the terms and conditions of an ordinance to be approved by the city council and accepted by the company. It is claimed that on December 14, two days afterwards, the respondent company accepted this resolution or ordinance. It is claimed by the respondent company that, in accepting this ordinance, it supposed the terms to be imposed contemplated the setting of poles, the stringing of wires, etc., and never supposed that they contemplated the paving of the streets between the tracks. On December 28, however, the council passed the ordinance, setting forth the terms and conditions upon which electricity might be used as a motive power; and, among the conditions, it was provided that the respondent should repair that portion of the streets and highways included between the rails, and not less than 12 inches outside thereof, and, wherever a double track should be used, that space lying between the tracks; and that, whenever any street in which tracks were laid should be paved by the city, the respondent company should pave its portion thereof as above described, with the same material, etc. On the day this ordinance was passed, the respondent company wrote the council as follows:

"Take notice that the St. Joseph & Benton Harbor Street Railway Company hereby repeats its acceptance of the ordinance granting to the street-railway company consent, permission, and authority to substitute and use elec-

tricity as a motive power upon its street railway in the city of Benton Harbor."

This was signed by the president of the company.

It is contended by the respondent in the present proceeding that this acceptance had relation only to the resolution of December 12, and was sent before the ordinance of December 28 was actually passed, and had no reference to the terms of that ordinance, requiring the paving to be done; and hence the respondent never accepted the terms of the ordinance, and cannot be compelled to pave between its tracks, etc.

The answer further sets out that in May, 1892, the respondent issued its bonds, secured by mortgage on all its property, for the sum of $150,000, with interest at 6 per cent., payable semi-annually, for the purpose of converting the road into an electric road, and for the payment of its floating debt, but that it was unable to raise sufficient money thereon, and on June 27, 1893, it gave a mortgage upon all its property for $200,000, securing 200 bonds of $1,000 each, bearing interest at 6 per cent. per annum, payable semi-annually, for the purpose of retiring the issue of $150,000 of May, 1892, and the payment of its indebtedness incurred in the extension and improvement of its road; that this mortgage was given to the Illinois Trust & Savings Bank of Chicago, as trustee, and the bonds were issued and sold to *bona fide* purchasers, and are held principally in Boston, Mass.; that interest on said bonds for 1893 to the amount of $5,000 is due and unpaid, and that interest for 1894 for the six months ending July 1 is unpaid, and that said company has lost money every year since it began to operate by electricity; that it has no credit, and is unable to borrow a dollar; that within the last six months its officers have endeavored to procure loans on the credit of the company in St. Joseph, Chicago, and Benton Harbor of banks and capitalists having money to

loan, and have been absolutely refused. A statement of the receipts and expenditures is set out, showing a deficit for 1892 of $5,516; for 1893, a deficit of $10,760; for the months of January to September, inclusive, of the year 1894, a deficit of $2,846; and also showing a judgment against the company of $1,725, in addition to taxes now accrued and unpaid,—all of which shows a shortage from January 1, 1892, to October 1, 1894, of over $20,000. Some claimed equitable defenses are also set up in the answer.

No issue is asked by the relator, and the statement of facts contained in the answer must be taken as true.

We shall not discuss or determine in this proceeding the question as to whether the ordinance of December 28, 1891, was ever accepted by the respondent company, or the claimed equitable defenses. The *mandamus* must be refused, however, on the second ground set forth in the answer. It appears by the answer that the officers of the company, in the financial straits in which it is placed, cannot procure funds to do the paving; that it is an utter impossibility to do what it is asked to have done; that it cannot pay the current expenses; and it is clear that a writ of *mandamus* will not issue to compel the performance of an act when it is apparent that the parties against whom it is to be directed have no power to comply therewith. As was said in *Silverthorne v. Railroad Co.*, 33 N. J. Law, 176:

"Of course, it is obvious that a return which shows a legal impossibility to do what the writ directs must, in the nature of things, as a general rule, be good; and, consequently, a want of funds and an inability to procure them will, for the most part, be a legal answer to the precept of the court requiring cause shown why certain moneys should not be paid."

This rule was recognized in *Railway Co. v. People*, 120 Ill. 200. It was said:

"It is an admitted fact that the road is greatly out of repair, * * * but the answer shows that the company has neither the funds, nor the means of raising them, which are required to put the road in a safe condition. Now, while the matter thus set up in the answer no more exonerates the company from the duties which it owes the public than the inability of one to pay his honest debts would relieve him from his legal liabilities to his creditors, yet it does show a conclusive reason why *mandamus* is not a proper remedy in the case; for no principle of law is better settled than that the writ should not be granted in any case where it is clear that it would prove unavailing; as where the act sought to be enforced is, from its very nature, physically impossible, or where, from extrinsic causes, it has become so, or where performance, though not absolutely impossible, is from any cause not within the power of the defendant. But whatever the ground may be, whenever it is apparent that the defendant is unable to perform the act sought to be thus enforced, the writ, as a general rule, will be denied,"—citing *People v. Railroad Co.*, 55 Ill. 95; *People v. Lieb*, 85 Id. 484; *People v. Trustees of Schools*, 86 Id. 613; *Cristman v. Peck*, 90 Id. 150; *People v. Hatch*, 33 Id. 9.

It was further said in that case:

"If, as seems to be the case, the defendant is wholly unable to discharge the duties it owes to the public, and which the law has imposed upon it, a proceeding in the nature of a *quo warranto* is the proper remedy, and not *mandamus*."

See, also, *People v. Railroad Co.*, 58 N. Y. 152; *People v. Hayt*, 66 Id. 606.

It is a general rule that a writ of *mandamus* will not issue unless it clearly appears that the person to whom it is directed has the absolute power to execute it. *Turnbull v. Giddings*, 95 Mich. 314; *Corby v. Durfee*, 96 Id. 11; *City of Port Huron v. Jenkinson*, 77 Id. 414; Merrill, Mand. § 76.

We are satisfied, from the return made to the order to show cause, that *mandamus* is not the proper remedy in the present case. It is shown that it is impossible to

borrow or otherwise raise the money to pay for the paving; and it would be futile to make the order, as the parties could not be punished for contempt in disobeying it. The city is not without its remedy, but *mandamus* is not the proper one.

The writ must be denied.

The other Justices concurred.