| 105 | 9 |
|-----|-----|
| 113 | 698 |
| 105 | 9 |
| d116 | 510 |

The People, ex rel. Alfred Wolcott, Prosecuting Attorney, v. The Plainfield Avenue Gravel-Road Company.

*Plank-road companies—Failure to rebuild bridge—Forfeiture of franchise—Abandonment of portion of road.*

A gravel-road company, whose road extended from the corporate limits of a city to the southern end of a toll-bridge owned and maintained by a bridge company, having purchased from the bridge company its property and franchises, amended its articles of association so as to include the bridge, and the portion of the highway on the north side of the river to its intersection with another gravel road, as a part of its road. The gravel-road company at one time placed its toll-gate on the north side of the river, and assumed and maintained control of the bridge, but after the expiration of the charter of the bridge company, which had about three years to run at the time of the purchase, made no extra charge for passage

over the bridge. About 13 years after the gravel-road company had assumed control of the bridge, it was carried away by a freshet, and the company, on being notified by the highway commissioner to rebuild the bridge, by an amendment of its articles of association, abandoned that portion of the highway included in its road by the former amendments, assigning as a reason for such action on its part its inability, by reason of charter restrictions, to raise the requisite amount of money by a mortgage of its road, or by a sale of stock or otherwise. Thereupon a bill was filed under the statute to declare forfeited the right of the gravel-road company to receive toll. And, in affirming a decree in favor of the complainant, it is held:

*a*—That the inability of the defendant to raise money with which to rebuild the bridge is no answer to the bill.

*b*—That the bridge constituted a part of the defendant's road, and it is of no consequence whether it was destroyed with or without fault on its part.

*c*—That the fact that the portion of defendant's road that included the bridge was added to the original road by amendment to defendant's charter in no manner affects the liability of the defendant.

*d*—That it is no defense that the abandonment specified in How. Stat. § 3650, had not continued for one year at the time the bill was filed, nor is it necessary to determine whether that section is applicable to this case; that the defendant had declared an abandonment of and a refusal any longer to maintain the added portion of its road, or to keep it in repair, and, under these circumstances, the public was entitled to institute the suit at once.

*e*—That the defendant had no legal right to amend its articles of association by abandoning that portion of the highway which included the bridge, thus limiting its road to its original length.

Appeal from Kent. (Adsit, J.) Submitted on briefs February 14, 1895. Decided April 16, 1895.

Bill to declare a forfeiture of the right of the defendant to receive toll for travel over its road. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Butterfield & Keeney* and *Alfred Wolcott,* for complainant.

*John W. Champlin* and *Bundy & Travis*, for defendant.

GRANT, J. The object of this bill, which was filed under How. Stat. § 3649, is to declare forfeited the right of defendant to receive any toll by reason of its failure to rebuild a bridge across Grand river.

The defendant was organized February 24, 1880, for the purpose of constructing a gravel road from the city limits of the city of Grand Rapids, where Plainfield avenue intersects the same, along the State road, commonly called the "Plainfield Road," through the township of Grand Rapids, to the bridge called the "Plainfield Bridge," a distance of seven miles. The period of its existence was fixed at 50 years, and the amount of the capital stock at $12,000, consisting of 240 shares at $50 each. It constructed its seven miles of road, began to receive tolls, and has continued to exact and receive them to the present time. These seven miles of road have always been kept in good condition, and as to them no complaint is made. October 11, 1853, a bridge company was organized for the purpose of constructing a toll-bridge over Grand river on this highway. The northern terminus of the gravel road was at the southern end of this bridge. The life of the bridge company was fixed at 30 years. It constructed the bridge, fixed the rate of tolls, and continued to operate it until it sold out all its property and franchises to the defendant, October 20, 1880, under a contract of sale, pursuant to which contract it executed a deed to the defendant August 7, 1886. November 6, 1883, the defendant amended its articles of association by a unanimous resolution by which it extended its road to the north side of Grand river, so as to include the bridge. By a second amendment it included the highway on the north side of the river to the intersection with the Canal Street Gravel Road, a few hundred feet from the bridge. The company at one time placed its toll-gate on the north side of the river, but made no extra charge for passage

over the bridge after the expiration of the bridge charter. The public and the public authorities appear to have acquiesced in this action of the defendant without any affirmative action on their part.    The defendant then assumed and maintained control of the bridge until the spring of 1893, meanwhile making whatever repairs it deemed necessary.    In March, 1893, a sudden and unusual freshet arose, carrying away a bridge above, one span of which struck and lodged against the Plainfield bridge, which was finally carried away and destroyed. The defendant neglected to rebuild the bridge, and on June 17, 1893, the highway commissioner of the township of Plainfield notified it to rebuild the bridge within 30 days.    On June 26, 1893, the stockholders of the defendant, pursuant to notice, met and amended its articles of association by abandoning that portion of the highway which included the bridge, and limiting the road to the original seven miles.    The reason for this action was stated in a report by the president to the stockholders at that meeting to be that a new bridge would cost $8,000, at least; that the law forbade a larger mortgage than one-half the capital stock; that the stock was fully paid up; that there was no hope of selling any new stock; that the officers of the company had made diligent efforts to secure aid from the township authorities, by which, with a bonded indebtedness of $6,000, a bridge might be built; and that they had made earnest efforts to find purchasers for an issue of bonds, but had failed.    In view of this condition of affairs, the amendment above noted, abandoning this portion of the road, was unanimously adopted.

The case was heard on pleadings and proofs taken in open court.    The only contested question of fact is whether the bridge was destroyed by the negligence of the defendant in failing to keep it in proper repair.    Upon this question of fact the court made no finding, evidently regarding it as immaterial.    The court entered a decree declaring that the bridge

was a part of the road, and that it was the duty of the defendant to maintain it; that it was its duty to rebuild it; that by the failure to rebuild, and abandoning that portion of the road, the defendant forfeited the right to take toll on any part of its road; and enjoining the defendant from collecting any toll, or in any way interfering with the right of the public to the use of the highway,—provided, however, that the defendant might within 60 days commence in good faith the building of a bridge to be completed within six months, in which event the injunction would be suspended.

Several questions may be disposed of quite briefly.

1. The financial condition of the company was immaterial. The inability of a corporation to raise funds to make necessary repairs, or to rebuild structures destroyed, may be a complete answer in a suit instituted to compel such repairs or construction (*City of Benton Harbor v. Railway Co.*, 102 Mich. 386), but it is no answer in a proceeding on the part of the public to forfeit its charter. Inability to perform its functions, no matter what the reason, is one of the most potent grounds for forfeiture.

2. The bridge constituted a part of the defendant's road, and it is of no consequence whether it was destroyed with or without its fault. If the right of abandonment did not exist, the duty to repair is imperative. It may be a hardship, but it was a part of its contract to make all repairs, no matter what the cause which made them necessary. *Meriwether v. Lowndes Co.*, 89 Ala. 362.

3. The fact that the portion of the road that included the bridge was added by amendment to the original charter in no manner affects its liability. The same rule must apply as would be applicable if the entire road had been originally included. *State v. Nonconnah Turnpike Co.* (Tenn.), 17 S. W. Rep. 128.

4. It is no defense to this action that the abandonment

specified in How. Stat. § 3650, had not continued for a year at the time of filing this bill. It is contended by the complainant that this suit is brought under section 3649, and that section 3650 does not apply. It is unnecessary, however, to determine this question. The defendant by its own solemn resolution, unanimously passed by its stockholders, had declared an abandonment of and a refusal to any longer maintain the road or keep it in repair. Under these circumstances, the public was entitled to institute this suit at once.

5. This brings us to the principal question in the case, viz., had the defendant the legal right to amend its articles of association so as to restore the original *termini* of the road, or, in other words, to abandon any portion of its road, so long as it kept five consecutive miles in good condition? Such a conclusion would lead to some strange results. Any plank-road company would thus be enabled to discontinue any part of its road, at either or both ends, so long as it left five consecutive miles in proper condition for travel, and thus leave the public to be inconvenienced, or at its expense repair any damage which such company might consider too expensive for it to make. If, in the present instance, the river had run in close proximity to the city, the company might say to the public:

"We have no funds. You must rebuild the bridge, if you desire ingress and egress. We have five miles of good road, over which we will still continue to charge toll. The rebuilding of the structure will be greatly to our benefit and to your convenience. We, however, can avoid liability by voluntary abandonment, as to which you have no choice. If you desire a public highway, you must rebuild it."

Let us suppose the defendant's road to have been ten miles in length, extending over one of the principal thoroughfares to the city, with several bridges, built at the public expense, within two miles and a half of each terminus. The center five miles were the least expen-

sive to construct and to keep in repair, and over which, standing by themselves, no franchise would probably have been granted. After receiving the benefits of the entire road for 10 years, a bridge is washed away within a mile of its outer terminus. It chooses not to rebuild, and therefore amends its articles of association by abandoning that portion which includes the bridge. Soon another bridge is washed away within the mile nearest the city, and the company takes like action. Other bridges are swept away in succession, or wash-outs occur, near the *termini*, and each time an amendment is made, until finally the company has left only the center five miles, which cost but little to construct or keep in repair. Is it not absurd to say that the Legislature intended to enact a law conferring such power upon a plank-road company?

If this be so, it follows that such power must clearly appear in the charter or law authorizing the formation of these corporations. The law requires each corporation to state in its articles the place from which and to which the road is to be constructed. If it desires to take an already existing highway, it can do so only by the consent of the proper public authority. It ought not to be permitted to abandon any part of such public highway at its own convenience, without the assent of the public authorities. There is not a single sentence in any provision of the law authorizing such abandonment without the consent of the Legislature. The learned counsel for the defendant base their argument upon the power conferred upon such corporations to amend their articles of association. This power is found in How. Stat. § 3598, which, after providing for the execution of articles of association, for filing in the proper office, for suing and being sued, for a common seal, for purchasing and acquiring land necessary for constructing, repairing, and preserving its road, for adopting by-laws, etc., provides that such associations shall "be subject to the provisions contained in chapter 55 of the Revised Statutes

of 1846, entitled 'General provisions relating to corporations,' *as far as the same shall be applicable and not inconsistent with the provisions of this act.*" The section of the general corporation act relative to amendments is as follows:

"Such corporation may at any time amend its articles of association by filing amended articles of association in the office of the Secretary of State, which said amended articles of association shall be made in all respects consistent with the provisions of the act or acts under which such corporation may be organized." How. Stat. § 4866.

Under this act these corporations may amend their articles in all those matters which do not affect the public, and with which, therefore, the public is not concerned, such as increase or decrease of their capital stock. As already shown, they cannot appropriate to their use or benefit any portion of an existing public highway without the assent of the proper public authorities. Having obtained the control of such highway by such assent, and having thereby agreed to keep it in repair, it would clearly be a most unwise policy to permit the company, at its own convenience, for its own benefit, and at its own choice, to abandon a portion of the highway the moment it has become out of repair. Such power must be shown to be clearly conferred by some provision of the law.

Under the law as it stood (How. Stat. § 3624) prior to the amendment of 1875, this Court was equally divided upon the question whether such corporation, having completed five consecutive miles of its road, obtained a vested right to toll over that part, notwithstanding the failure to construct the balance of the road. *People v. Plank-Road Co.*, 9 Mich. 285. In 1875 the statute was amended, giving the right to receive tolls at any time after the construction of two consecutive miles, but providing that this provision should apply only during the period of construction, and not afterwards. How.

Stat. § 3650.   This amendment modified section 3624, which read as follows:   "Whenever any plank-road company shall have completed their road, or any five consecutive miles thereof, the said company may erect toll-gates and demand and receive toll," etc.,—and regulated the right to charge toll during the period of construction.   Section 3649 provides that every plank-road company shall cause to be laid down and kept closely together and in an even manner, so that the surface shall be uniform, the plank upon its road, or, if the said company shall have built any portion of its road of gravel, or of stone so broken as to serve the purpose of gravel, it shall cause said gravel or broken stone, of proper quality and quantity, to be placed upon the road and kept in a uniform manner of the width and depth required by law, and *in case of default it shall forfeit the right to receive any toll upon its road.* A bridge is a part of the road, and the corporation is bound to build and keep it in repair, even though the statute is silent in regard to it.   *People v. Turnpike Road,* 23 Wend. 254; *Turnpike Co. v. Berry,* 5 Ind. 286; *Hord v. Village of Montgomery,* 26 Ill. App. 41.   The right to maintain an action for non-repair was sustained in *People v. Plank-Road Co.,* 67 Mich. 5.   Under the defendant's theory of the law, it can avoid any such proposed action, and nullify the provision of section 3649, by amending its charter as often as any such action is proposed or suit commenced to enforce the remedy.   This theory is unreasonable, and inconsistent with the plain purpose of the law and the contracts entered into between the State and these corporations.   They cannot receive the benefits without accepting and bearing the burdens.

After the most careful examination we have been able to devote to the subject, we are constrained to hold that the statute does not confer the right of abandonment claimed, and that the defendant by its action has forfeited the right to receive tolls.

The decree must therefore be affirmed, with costs. The defendant will, however, be allowed six months from the date of filing this opinion within which to construct the bridge, and thus retain its franchise.

The other Justices concurred.