PETER GLOE, APPELLEE, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED JULY 22, 1902. No. 12,084.

Commissioner's opinion, Department No. 3.

1. **Agreement: ERECTION OF STRUCTURE: PAYMENT OF MONEY IN LIEU THEREOF: ELECTION.** Where an agreement gives one of the parties thereto the option to erect and maintain a structure of a certain description, or to pay a specified amount of money in lieu thereof, and the party exercises his election by building the structure, such election is final, and he can not relieve himself from maintaining the structure by tendering payment of the money.

2. **Action for Specific Performance.** On action brought to compel specific performance of a contract to maintain a structure of a certain description under the circumstances mentioned in the first syllabus, the defendant, on the trial, tendered to the plaintiff payment of the money, which the defendant might, in the first instance, have paid in lieu of the work to be done. *Held*, That this was an admission that the contract

had been made as claimed by the plaintiff, and defendant could not thereafter complain that the plaintiff's petition was defective or his evidence insufficient to establish the contract.

3. **Railroad: Right of Way: Agreement: Track Crossing.** Where land for right of way is conveyed to a railroad company under an agreement that one or more under-track crossings of certain specified dimensions are to be built and maintained for the convenience of the grantee in working the land across which the road is constructed, a court of equity will decree specific performance of the contract and not leave the grantee to his action for damages, when specific performance will alone answer the purpose of justice.

Appeal from the district court for Lancaster county. Heard below before Holmes, J. *Affirmed.*

*W. F. Evans, Lorenzo W. Billingsley* and *Robert J. Greene,* for appellant.

*Charles O. Whedon, contra.*

Duffie, C.

The plaintiff is the owner of the north half of the northeast quarter of section 32, township 8 north of range 6, and the west half, and the west half of the southeast quarter and the southwest quarter of the northeast quarter of section 8, township 7, range 6, in Lancaster county. These two tracts are a mile or more apart, and at the time of the contract hereinafter set out the appellant contemplated building its line of railway across the land, and sought to secure a right of way through the same from the appellee. The effect of constructing a railway over the premises without affording plaintiff any means of passing beneath the roadbed would be to prevent the appellee from going from one portion of his farm to another without crossing the railroad track, and he desired the company to enter into an agreement that it would, in addition to the money to be paid for the right of way, construct and maintain two under-track crossings on the premises above described, so as to afford him facilities for passing beneath the railroad track with ordinary farm wagons loaded with hay or

grain. After some negotiations, the following contract
was entered into between the parties:

"Whereas Peter Gloe and wife have this day by deed
conveyed to the Chicago, Rock Island & Pacific Railway
Company, a strip of land for right of way purposes de-
scribed in said deed for the consideration of $2,625, and
whereas said railway company has also agreed as a part
of the consideration for the sale of said strip of land, that
it will, before its line of railroad over and across said line
is completed and ready for use, construct and erect an
under-track crossing on the N. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of section 32,
township 8, range 6 east, and also an under-track crossing
on the S. W. $\frac{1}{4}$ of section 8, township 7, range 6 east, said
under-track crossings to be not less than 12 ft. wide at the
bottom and the first of the above mentioned crossings to
be not less than 14 ft. high in the clear and the second of
the above-mentioned crossings to be not less than 12 ft.
high in the clear, now if said company shall fail to con-
struct and erect said under-track crossings as aforesaid,
then it shall pay to the said Peter Gloe, his heirs or assigns
the further sum of $1,000; and if said company shall fail
to construct and erect either one of said crossings and
shall construct and erect one, then it shall pay to said
Peter Gloe, his heirs or assigns, the sum of $500. This
agreement shall be taken and construed as a part of the
purchase price of said land conveyed for right of way pur-
poses. Dated this 23d day of September, A. D. 1892."

The agreement was signed on behalf of the railway com-
pany by C. H. Thompson, who conducted the entire nego-
tiation made on the part of the company, and who alone
represented the company in procuring the right of way
deeds. On the same day on which the contract was made
Gloe executed deeds for right of way through said prem-
ises, and delivered them to the company, and thereafter
the roadbed was constructed, the company putting in pile
bridges, affording the appellee the under-track crossings
provided for in the contract. These crossings were main-
tained as originally constructed until about August, 1899,

when, as alleged in appellee's petition, the company, without his consent and against his protest and objection, took out the under-track crossings on the north half of the northeast quarter of section 32 and constructed in place thereof a stone culvert having perpendicular walls five feet in height and about ten feet apart at the bottom, and having an arch built from one of said walls to the other; that as said culvert was constructed and has since been maintained, it is impossible to drive a team of horses through the same, and impossible to pass beneath the railroad track at that point with an ordinary farm wagon loaded with hay or grain, and no other under-track crossings have been provided on the premises; and that by taking out said under-track crossing as originally constructed, and putting in place thereof said culvert, appellee has been deprived of an under-track crossing on said premises, contrary to the agreement.

It will be observed that the land in section 32 is described as the north half of the southeast quarter, whereas the land actually owned by the plaintiff, and the land through which a right of way was granted to the defendant, is the north half of the northeast quarter, and it is alleged in the petition that "in reducing said agreement to writing, either by mistake or design on the part of the defendant, who wrote or caused to be written the agreement that was written it was provided that the said defendant should construct and erect an under-track crossing on the north half of the southeast quarter of section 32, township 8, range 6, when in fact this plaintiff did not agree to convey a right of way over or across the north half of the southeast quarter of said section 32, nor did the plaintiff own, nor was he in possession of the north half of the southeast quarter of said section 32, but the under-track crossing which defendant did agree to construct and maintain as aforesaid was to be on the north half of the northeast quarter of section 32. And also by mistake or design on the part of the defendant, or its representative, who wrote or caused to be written said agreement, that portion

of said contract whereby the defendant agreed not only
to construct, but to maintain said under-track crossings
so long as the premises over which defendant so acquired
a right of way should be used for railroad purposes, was
omitted therefrom." It is further alleged that plaintiff
was born in Germany, was unable to read or write the
English language, and could not and did not read the said
agreement, nor was the same read over to him as it was in
fact written, nor did he ascertain that said agreement did
not contain the correct description of the land upon which
said under-track crossings were to be erected and main-
tained, or that the said agreement did not provide for the
maintenance of said under-track crossings, until shortly
prior to the commencement of this suit; and that, relying
upon the agreement of the defendant, and believing that
the written agreement correctly described the premises
upon which the under-track crossings were to be erected
and maintained, and that it correctly set forth the actual
agreement entered into between the parties, he executed
and delivered to the defendant a deed conveying a right of
way through the premises. The prayer was: First, that
the defendant might be decreed to remove the stone cul-
vert and to place in lieu thereof an under-track crossing,
not less than 12 feet wide at the bottom nor less than 14
feet high in the clear, and to maintain the same while the
said right of way over the premises of the plaintiff should
be used for railway purposes; or, second, if the defendant
should not be required to remove said stone culvert that
then it be decreed to erect, construct and maintain so long
as the right of way should be used for railway purposes,
an under-track crossing on the north half of the northeast
quarter of section 32, equally convenient for the plaintiff,
and not less than 12 feet wide at the bottom nor less
than 14 feet high in the clear; and, third, that if the
court should find it necessary so to do, that said agreement
which was written be so amended as to express the real
agreement between the parties; and, fourth, that the plain-
tiff have such other, further or different relief as to the

court should seem equitable in the premises. The answer of the defendant admits its corporate capacity; admits the plaintiff's ownership of the real estate described in the petition; admits that on September 23, 1892, defendant purchased of plaintiff for the sum of $2,625 a right of way through the premises, which was conveyed by warranty deed. It denies that the defendant, or any one authorized to act for it, executed or delivered the agreement set forth in plaintiff's petition; denies that the defendant or anyone authorized to act for it, entered into the contract alleged in the petition to have been made between the plaintiff and defendant; denies that it, or anyone authorized to act for it, agreed to maintain underground crossings on the land described in the petition; denies generally the allegations of the petition except as admitted in the answer; and, lastly, alleges that the cause of action stated in the petition did not accrue within five years next after the commencement of the action. A reply was filed denying all new matter set forth in the answer. After issue was joined, the plaintiff filed a supplemental petition, in which it is alleged that since the filing of his original petition, and on or about the 1st of June, 1900, the defendant commenced to remove the under-track crossing mentioned in the petition and located on the southwest quarter of section 8, township 7, range 6, which under-track crossing is of the dimensions stated in the contract set out in the original petition; that without the consent of the plaintiff, and against his protest and objection, defendant proposed to take out said under-track crossing, and in lieu thereof to put in another under-track crossing, which will not be of the dimensions mentioned in the contract, but, on the contrary, will be about twelve feet wide, with walls about six feet high, and then arched over, but the same will not be of the height of twelve feet in the clear, as provided in the contract, and that it would be impossible to drive a team of horses attached to an ordinary farm wagon loaded with hay or grain through the same as it was now proposed to erect and continue it. The supplemental petition

asked that the defendant be perpetually restrained and enjoined from removing said under-track crossing as originally constructed, unless the defendant will build in lieu thereof another crossing of the dimensions mentioned in the original contract. The answer was a general denial. The court in its decree finds that an agreement was made between the plaintiff and the railway company, acting through its duly authorized agent, as set forth in the plaintiff's petition, and the seventh finding is as follows: "The court finds that in the drawing of said written contract as described herein there was error in the description of the land where said under-track crossings were to be constructed, but said error is admitted by said defendant company in the record herein, and were to be so constructed at the places in plaintiff's petition alleged." The court further found that the necessities of public travel and due regard for public safety rendered it necessary that the crossings as originally constructed by the defendant company should be removed, and that they be supplanted by the construction of crossings more durable and permanent than wooden bridges, but there was no reason appearing from the evidence why said new structures should not be made of the dimension provided by the terms of the contract. The decree further provided that the defendant should construct and maintain an under-track crossing not less than 12 feet wide at the bottom and not less than 14 feet high in the clear beneath its track on the north half of the northeast quarter of section 32, and another under-track crossing not less than 12 feet wide at the bottom nor less than 12 feet high in the clear beneath its track on the southwest quarter of section 8. From this decree the defendant has appealed, and asked to have the judgment reversed.

The appellant insists upon the well-established rule that in the absence of fraud or mistake, parol evidence is not admissible to vary or change the terms of a written contract, and that in pleading fraud it is necessary to set out the facts relied upon for relief; and it is urged that the

plaintiff's petition does not state facts showing fraud in procuring the contract set forth in plaintiff's petition, nor any mutual mistake of the parties in reducing the terms of said contract to writing. We do not think that under the circumstances disclosed by the record it is necessary to examine these questions. Upon the trial one of the attorneys for defendant made the following offer: "We tender to the plaintiff $1,000 which is the amount covered by the contract, and I will ask the court to count it to see if the proper amount is there." This offer being declined, the following offer was made: "I now tender you $1,-050.10, the $1,000 being the amount specified in the contract and the $50.10 being the costs in full payment and discharge of the contract in this case." We think that this is a full admission on behalf of the defendant company that the contract was in all its terms and conditions as claimed by the plaintiff, and that it can not now be heard to urge either any insufficiency in the pleadings or want of proof on the part of the plaintiff in support of his claim. The contract, as thus confessed, provided that in case the company failed to construct and erect two under-track crossings, it should pay to the plaintiff the sum of $1,000; and if it failed to construct either one of the said crossings, but constructed the other, it should then pay to the plaintiff the sum of $500. Under this contract the company had its election to pay the money or to construct and maintain the crossings. Having elected to construct the crossings, it can not now recede from that election and require the plaintiff to accept money in lieu thereof.

It is vigorously contended that the contract in question is of such a nature that a court of equity will not enforce its performance. It is said that the undisputed evidence establishes that the necessities of public travel, and a due regard for public safety, render it imperative that the bridges originally constructed, and which the appellee has used as under-crossings, shall be removed, and supplanted by constructions of the character of those proposed by the company; and it is said that, as a matter of law, contracts

to maintain constructions are not enforceable beyond the period of the utility of the construction, and that the plaintiff's only remedy is at law for damages. *Texas & P. R. Co. v. City of Marshall*, 136 U. S., 393, and *Jones v. Newport News & M. V. Co.*, 65 Fed. Rep., 736, are referred to as authorities supporting this contention. In the case first above cited the county of Harrison, of which the city of Marshall was the county seat, donated to the Texas & Pacific Railway Company $300,000 in bonds, and the city of Marshall donated sixty-six acres of land, under an agreement that the company would permanently establish its eastern terminus and Texas office, and establish and construct its main machine shops and car works at the city of Marshall. The machine shops and car works were constructed and maintained at said city for a period of about eight years, when the company moved various parts of its machine shops and its Texas office to other cities, and had made other changes by which the city of Marshall ceased to be the terminus of the road. On a bill brought to enforce the specific performance of the contract, it was held that the contract was satisfied and performed when the company "establishes and keeps a depot, and sets in operation car works and machine shops, and keeps them going for eight years, and until the interests of the railroad company and the public demand the removal of some or all of these subjects of the contract to some other place." The court held that the word "permanent" as used in the contract in that case did not mean forever, and that the fair meaning of the words "permanent establishment," as there used, was the erection of the necessary buildings with no intention at the time of removing or abandoning them. But other elements entered into the consideration of that case, such as the interest of the public at large, and the fact that a contract to maintain and operate machine and car shops, if the court should attempt to specifically enforce the same, would require the supervision of the court for all time to come. In the body of the opinion it is said: "If the court had rendered a decree restoring all the offices

and machinery and appurtenances of the road which had been removed from Marshall to other places, it must necessarily superintend the execution of this decree. It must be making constant inquiry as to whether every one of the subjects of the contract which have been removed has been restored. It must consider whether this has been done perfectly and in good faith, or only in an evasive manner. It must be liable to perpetual calls in the future for like enforcement of the contract, and it assumes, in this way, an endless duty, inappropriate to the functions of the court, which is as ill-calculated to do this as it is to supervise and enforce a contract for building a house or building a railroad, both of which have in this country been declared to be outside of its proper functions, and not within its powers of specific performance." We do not think that that case can be considered an authority against the right of the court in this action to enforce specific performance of the contract under consideration. The operation of machine and car shops is a continuing business. If the court should undertake to see that the Texas & Pacific Railway Company performed its contract, it would have to supervise the running of the business of those shops from day to day and from year to year, and to determine whether the shops were maintained in a proper manner, with proper machinery, with an adequate force, and in fact to perform the functions of a manager of the business so far as to see that the company was honestly and fairly maintaining the shops as the business of the road required, and whether, by evasion and dishonest means, it was giving to some other point or points upon the road work which should fairly and honestly be performed at the city of Marshall. In the present instance we assume that the defendant in good faith desires to erect crossings over the ravines formerly spanned by its pile bridges, which shall be permanent in character and safe for public travel. The work when once completed will stand for years, if not for all time. The building of these culverts is not a continuing work, needing the daily supervision of a court for an in-

51

definite time to see that it is honestly done. The trial court has found, and there is no evidence in the record to dispute the finding, that permanent structures affording the plaintiff such accommodations as the contract contemplates, may be readily constructed. That they may be more expensive than the culverts proposed to be built by the defendant company is probably true, but that is no reason why the contract as made between the parties should not be honestly performed.

In *Storer v. Great W. R. Co.*, 2 Younge & Collyer, Ch. [Eng.], 48, the plaintiff had sold to the railway company the right of way through his pleasure grounds, and the company had agreed, in order that he might have the full use of his adjoining land, that it would make an archway under its road-bed large enough for a wagon loaded with hay to pass with facility. The court decreed that the archway should be made. The vice-chancellor said that it was competent for that court to enforce the specific performance of a contract by the defendant to do defined work upon its own property, in the performance of which the plaintiff has a material interest, and one which can not be compensated in damage.

*Price v. Mayor*, 4 Hare [Eng.], 506, is a case where the contract for certain improvements was specifically enforced. It was there said: "The contract was, that the corporation, having purchased the plaintiff's land, should, at their own expense, make a street, and also a market. Under this contract, the corporation have taken possession of the land, and converted it, and, having had the benefit of the contract in specie, as far as they are concerned, I need not say that the court will go to any length which it can to compel them to perform the contract in specie."

And in *Stuyvesant v. Mayor*, 11 Pai. Ch. [N. Y.], 414, 427, Chancellor Walworth, in the course of his opinion, says: "The true rule on the subject of decreeing the specific performance of a covenant in such cases, is, that where, from the nature of the relief sought, performance

in specie will alone answer the purpose of justice, this court will compel a specific performance, instead of leaving the complainant to a remedy at law, which is wholly inadequate. The court has jurisdiction, therefore, to compel the specific performance, by the defendant, of a covenant to do certain specific work, or to make certain improvements or erections upon his own land, for the benefit of the complainant, as the owner of the adjoining property, who has an interest in having such work done or such improvements or erections made."

The defendant procured from the plaintiff a conveyance of the right of way, covenanting as part consideration therefor to make these two under-track crossings to accommodate the plaintiff in the use of his land. It has used the right of way and constructed its roadbed across the premises. The evidence is conclusive that the road-bed is so constructed that the plaintiff has to drive along the track a mile or more before he can cross it, and then return upon the other side to reach his own premises. Without these under-track crossings, his land is greatly depreciated in value, and he is put to serious inconvenience in working the same. He is irreparably injured in the enjoyment of his property unless the defendant performs its agreement, and affords him these under-track crossings for which he contracted in consideration of conveying away his land. Having taken his land and appropriated it to a *quasi*-public use, the court will compel a performance of the agreement that induced the conveyance.

We recommend that the decree of the district court be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.