FERGUSON et al. v. OMAHA & S. W. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1915.)

No. 4407.

1. COURTS ☞385—CIRCUIT COURT OF APPEALS—JURISDICTION—CASES INVOLVING JURISDICTION OF LOWER COURT.

It is only when the jurisdiction of a District Court as a federal court is involved that an appeal or writ of error lies direct to the Supreme Court, under Judicial Code (Act March 3, 1911, c. 231), § 238, 36 Stat. 1157 (Comp. St. 1913, § 1215). A decree dismissing a bill for want of jurisdiction in equity is reviewable by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1022–1025, 1031; Dec. Dig. ☞385.

Jurisdiction of Circuit Court of Appeals in general, see notes to Law Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

2. COURTS ☞264—JURISDICTION OF FEDERAL COURT—ANCILLARY SUIT.

An ancillary suit may in a general way be defined as a suit or proceeding in equity growing out of a prior suit in the same court, dependent upon and instituted for the purpose either of impeaching or enforcing the judgment or decree in the prior suit, to the end that more complete justice may be done among all parties in interest; and the jurisdiction of such suit by a federal court is dependent upon the jurisdiction of the court of the prior suit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec. Dig. ☞264.]

3. COURTS ☞264—JURISDICTION OF FEDERAL COURT—ANCILLARY SUIT.

Where, pending a suit in a federal court to foreclose a mortgage, the mortgagor undertook to convey certain rights in the land to third persons, who asserted such rights after foreclosure decree and sale, a bill by the mortgagee, who was the purchaser, filed in the same court, bringing in such third persons to have their rights adjudicated and declared subject to the decree, is ancillary, and as such within the jurisdiction of the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec. Dig. ☞264.]

4. APPEAL AND ERROR ☞895—DISPOSITION OF CAUSE—ENTERING FINAL DECREE.

When the entire record of a cause, including all the evidence therein, is before an appellate court upon an appeal in equity, such appellate court may consider the case on the merits, and either enter a final decree or remand the cause to the lower court with direction to do so, though the lower court has not considered the merits.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3645–3648; Dec. Dig. ☞895.]

5. CONTRACTS ☞143—CONSTRUCTION—GENERAL RULES.

It is a fundamental rule that all contracts are to be construed with reference to their subject-matter and the situation of the parties at the time of their making.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 723, 743; Dec. Dig. ☞143.]

6. COVENANTS ☞79—RIGHT OF WAY DEED—AGREEMENT TO MAINTAIN WAGON ROAD—RIGHT TO SPECIFIC PERFORMANCE.

The owner of a large tract of land bordering on the Missouri river conveyed to a railroad company a right of way over a strip of land lying between the river and a high bluff; the deed expressly providing that

the company should "make and keep in repair a wagon road parallel with the track of the railroad and two permanent crossings over the tracks for teams at points to be designated by the grantor." On account of the bluff such road constituted the only means by which the grantor could pass from one part of his land to another. *Held,* that such reservation and agreement were in the nature of a covenant running with the land, that the railroad company was not relieved from performance of the agreement by the fact that by ordinary action of the waters of the river a portion of its right of way had been damaged or washed away, but not to such extent that it could not be repaired and protected against further injury, and that the successors in title to the grantor were entitled to a specific performance of the contract.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 79–82; Dec. Dig. ☾79.]

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit in equity by Smith F. Ferguson, as executor of the will of Everard D. Ferguson, deceased, and others, against Omaha & Southwestern Railroad Company and another. Decree for defendants, and complainants appeal. Reversed.

The bill of complaint was filed February 28, 1907, in the District (then Circuit) Court of the United States for the District of Nebraska by the appellants, Smith F. Ferguson, as executor of the last will and testament of Everard D. Ferguson, deceased, and Smith F. Ferguson and Hortense E. Childs, as sole devisees under said will, against the appellees, the Omaha & Southwestern Railroad Company, a Nebraska corporation, and the Chicago, Burlington & Quincy Railway Company, its lessee, an Illinois corporation, to determine their rights, if any, in certain real estate in Sarpy county, Neb., acquired by Everard D. Ferguson, February 26, 1904, under a decree of foreclosure of certain mortgages upon the premises in favor of Everard D. Ferguson in a suit commenced in said court by him against Charles Childs and others in January, 1900. The defendant railroad companies in this suit were not parties to the original suit or bill; but it is alleged in the present bill that they have acquired some interest in or rights to a portion of the premises included in the mortgages foreclosed in the foreclosure suit while it was pending in the Circuit Court; and this bill is filed as ancillary to said original suit to determine the interests and rights of the defendants herein to said premises and declare them to be inferior to the rights of the plaintiffs, and to enforce said decree of foreclosure against these defendants. The defendants answered the present bill, and testimony was taken by both parties upon the merits, and upon final hearing the suit was dismissed "for want of jurisdiction," and the plaintiffs appeal. Other facts essential to a determination of the questions presented will be stated in the course of the opinion.

Francis A. Brogan, of Omaha, Neb. (Anan Raymond, of Omaha, Neb., on the brief), for appellants.

Arthur R. Wells, of Omaha, Neb. (Byron Clark and Jesse L. Root, both of Omaha, Neb., on the brief), for appellees.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

REED, District Judge (after stating the facts as above). The defendants have presented to this court a motion to dismiss the appeal upon the ground as follows:

"The appellees move the court to dismiss this case on the ground that this court has no jurisdiction of the appeal taken therein, for the reason that the jurisdiction of the District Court to hear and determine the cause under the

Constitution and statutes of the United States was in issue in the District Court, and that court entered a decree dismissing the suit for want of such jurisdiction."

The motion rests upon section 5 of the Court of Appeals Act of Congress, approved March 3, 1891 (26 Stat. 827, c. 517), now included in section 238 of the Judicial Code, which reads in this way:

Section 238: "Appeals and writs of error may be taken from the District Courts * * * direct to the Supreme Court in the following cases: In any case in which the jurisdiction of the court is in issue, in which case the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision. * * * *"

Prior to the decision of the Supreme Court in Louisville Trust Co. v. Knott, 191 U. S. 225, 24 Sup. Ct. 119, 48 L. Ed. 159, there was some diversity of opinion in the Circuit Courts as to what "question of jurisdiction" may be certified direct to the Supreme Court under this section upon final determination of the cause. But in that case it was determined by the Supreme Court that the "question of jurisdiction," which, when put in issue and is determined by the lower court, may be certified to the Supreme Court, must be one involving the jurisdiction of that court *as a federal court,* and not merely its general equity jurisdiction and practice applicable to the state as well as to the federal courts. See Bogart v. Southern Pacific Co., 228 U. S. 137, 33 Sup. Ct. 497, 57 L. Ed. 768, and Geneva Furniture Co. v. Karpen Brothers, 238 U. S. 254, 35 Sup. Ct. 788, 59 L. Ed. 1295.

[1] The first question for consideration upon the motion to dismiss therefore is: Was the jurisdiction of the District Court as a federal court distinctly put in issue in that court and determined by it? A correct understanding of the nature of the cause of action is necessary to a determination of this question. The bill alleges, and the proofs show, that on and prior to January 3, 1872, one Charles Childs was the owner and in possession of a large tract of land in Sarpy county, Neb., bordering on the westerly bank of the Missouri river immediately south of the city of Omaha in that state. The defendant Omaha & Southwestern Railroad Company, desiring to construct its railroad upon and over said land, obtained from Childs a right of way deed to a strip of land 100 feet wide over the same on that date (January 3, 1872), which deed contained the following provisos and reservations to the effect:

That in case said railroad company shall permanently abandon the route through said tracts of land, then the same shall revert to and become revested in the said grantor, his heirs or assigns; that the grantor reserves the rock and timber on said strip of land, and may enter thereon and remove the same in a manner not to interfere with the operation of the railroad; also reserves the right to cross the railroad track, and travel with teams or otherwise along the right of way parallel with the tracks; and it is expressly understood "that the grantees are to make and keep in repair a wagon road parallel with the track of the railroad, and two permanent crossings for teams at points to be designated by the grantor, and the grantor reserves the right to make other crossings and use them, not interfering, however, with the operation of the railroad."

The railroad company afterwards constructed its railroad upon said right of way, and a wagon road and two crossings for the use of the grantor at points designated by him, and maintained them for many

years. At the time of making this right of way deed Childs was using all of his lands for farming and other purposes, and at the point where the wagon road and two crossings were reserved there was a narrow passageway between the river and a high bluff fronting thereon, which passageway afforded the only means of passing from one part of the land to the other on either side of the bluff, and the wagon road and crossings were reserved over such passageway and constructed by the railroad company to enable Childs to do so. About March 7, 1895, Childs being still the owner of the land, subject only to said right of way deed, conveyed the same with general covenants of warranty to Everard D. Ferguson, which deed was duly acknowledged and recorded in the office of the proper register of deeds on April 20, 1895, and possession of the land thereunder was delivered to said Ferguson. Said conveyance, though in form an absolute deed, was intended as security only for an indebtedness owing by Childs to Everard D. Ferguson. January 20, 1900, Everard D. Ferguson commenced suit in the Circuit Court of the United States for the District of Nebraska against Childs and others to foreclose such mortgages upon said real estate, and such proceedings were had therein that a decree of foreclosure was rendered in his favor, under which the said real estate was sold and deeded to him by a master in-chancery, and such deed and sale were duly approved by that court on February 26, 1904, and Ferguson thereupon became entitled to and continued in possession of said premises, except only to the extent that he was prevented by the railroad companies from using the wagon road, and crossings over the railroad tracks. September 8, 1906, Everard D. Ferguson died testate in the state of New York, where he resided, and by his will left his property to his children, the plaintiff, Smith F. Ferguson, and a daughter, now Hortense E. Childs, and named the plaintiff, Smith F. Ferguson, as executor of his will and trustee of his property during the widowhood of his surviving widow, which will was duly probated in the state of New York, and also in the state of Nebraska, where he left real and personal property to be administered.

Paragraph 5 of the bill alleges:

"That this suit is brought by the complainants for the purpose of enforcing the rights in the said premises which Everard D. Ferguson acquired under the decree of foreclosure, and the sale and master's deed to him pursuant thereto, and is ancillary to the said prior suit, and that this court has jurisdiction to hear the bill of the plaintiffs and grant the relief herein prayed, for the purpose of fully carrying out the decree entered in said former suit."

The answer of the defendants admits the making of the deed of March 7, 1895, by Childs to Everard D. Ferguson, the foreclosure of that deed as a mortgage in the Circuit Court, the sale and deed of the premises by the master to Everard D. Ferguson under said decree, and the confirmation thereof by the Circuit Court; the reservations by Childs in the right of way deed of January 3, 1872; the construction by the railroad company of the wagon road and crossings over the railroad for the use of the grantor in said deed, and the maintenance thereof as alleged in the bill. As to the jurisdiction of the District Court in this case it is alleged in paragraph 5 of the answer as follows:

"Deny that this suit is brought for the purpose of enforcing the rights in the said premises which the said Everard D. Ferguson acquired under the said decree of foreclosure or under the sale made or the master's deed issued pursuant thereto, and deny that this suit is ancillary to said prior suit, and submit whether this court has jurisdiction to hear the bill of your orators or grant the relief prayed for in the bill of complaint for the purpose mentioned in the fifth paragraph of said bill."

Otherwise the jurisdiction of the court is not questioned, nor is the jurisdiction of the Circuit Court to foreclose the mortgage challenged, but is admitted by the answer.

On June 7, 1901, while Everard D. Ferguson was in possession of said real estate, and the use and enjoyment of said wagon road and the crossings over the railroad, and while the foreclosure suit was pending, Childs made to the Omaha & Southwestern Railroad Company a quitclaim deed of a strip of land described by metes and bounds, and as being 100 feet in width, immediately south of the 100 foot right of way granted by the deed of 1872. In said quitclaim Childs also released all rights, privileges, or claims reserved or contracted for in the deed of January 3, 1872, and any right or privilege granted or recognized by the railroad company for use as a wagon road or for any occupancy, use, or easement in any respect; and since such deed the railroad companies have refused to maintain a wagon road upon and along the right of way, and the two crossings over the railroad for the use of Everard D. Ferguson, or his executor and the devisees under his will, thus preventing them from having access from one part of said real estate to other parts thereof. The prayer of the bill is that a further decree be entered by the court defining the rights which Everard D. Ferguson acquired under the decree of foreclosure, and that it be found and determined that the wagon road along said right of way parallel to the railroad and the crossings over the railroad tracks are appurtenant to said lands, and that the title of the plaintiffs in and to all of said real estate be quieted in them as against the claims of the defendants under the quitclaim of June 7, 1901; that the defendants be forever enjoined from interfering with the continued use and enjoyment by plaintiffs of a wagon road along the right of way and crossings over the tracks; that defendants be required to maintain the same for the use and benefit of the plaintiffs; and for other proper equitable relief.

The defendants claim that whatever rights were reserved by Childs in the right of way deed of 1872, or recognized by the railroads thereafter, were personal to Childs, and were released and relinquished by the deed of June 7, 1901. Some other matters are also urged that go to the merits, but need not now be stated or considered. The suit by the plain allegations of the bill is intended to foreclose the mortgage of Everard D. Ferguson as against the railroad companies, and determine the title and rights acquired by him under the decree of foreclosure as against their claims under the quitclaim deed of June 7, 1901. Upon the final hearing the District Court entered a decree as follows:

"This cause came on for final hearing on the bill of complaint, the joint and several answer of the defendants, and upon the evidence, was argued by counsel, and upon due consideration thereof by the court it is ordered, adjudged, and decreed that this suit be and is hereby dismissed for want of jurisdiction. To which order the plaintiffs duly except."

This decree fails to state what the lack of jurisdiction was that led to such dismissal, and in granting the appeal of the complainants from such decree no question of jurisdiction "was certified to the Supreme Court." This is not a compliance with section 238 of the Judicial Code. At the time of filing this order for decree, the judge filed a memorandum opinion, which is as follows:

"The jurisdiction of the court to determine this case depends upon the ancillary nature of the suit. A deed of land to a railway company contained a reservation to the grantor of a private way parallel to the railroad right of way and of a crossing at either end of the way, to be maintained by the railway company. This way was so maintained and used for many years. The grantor conveyed his land to the plaintiff's predecessor in title, intending thereby to give security for a debt, and the mortgagee entered into possession, and foreclosed the mortgage by a suit in this court, under which he became the purchaser at the resulting sale. The railway company was not a party to that suit. This suit asks for specific performance of the contract for the private way and crossings, and itj is claimed that it is a dependent suit to the foreclosure proceedings; but the suit is against those who were not' parties or privies to the original suit, and is not to enforce or carry out the original decree, but is to adjudicate a claim that accrued before the foreclosure proceedings were begun, and which does not depend upon the original suit, but upon the original contract between the parties. Such a suit is an original suit, not ancillary. Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845; Stillman v. Combe, 197 U. S. 436, 25 Sup. Ct. 480, 49 L. Ed. 822; Campbell v. Golden Cycle Mining Co., 141 Fed. 610, 73 C. C. A. 260.

"The bill asserts that during the pendency of the foreclosure suit the mortgagor conveyed to the railway company another strip of land, and that the company has since occupied it as the right of way, and prays that title be quieted as to this portion of the land. It is claimed that the court has jurisdiction to grant this relief, and, having jurisdiction thereover, it may proceed to determine all controversies between the parties as to the subject-matter, including the rights under the original agreement stated. It is well settled that as to land long occupied by a railway company for public purposes, such as carrying on traffic, an equitable action seeking to quiet title thereto cannot be maintained, nor will an action in ejectment lie, but the party must seek his compensation in damages in an action at law. Roberts v. Northern Pacific Railroad Co., 158 U. S. 1 [15 Sup. Ct. 756, 39 L. Ed. 873]; Northern Pacific Railroad Co. v. Smith, 171 U. S. 260, 271 [18 Sup. Ct. 794, 43 L. Ed. 157]; Chicago, Burlington & Quincy Railroad Co. v. Englehart, 57 Neb. 444, 77 N. W. 1092; Blakely v. Chicago, Kansas & Nebraska Railway Co., 46 Neb. 272, 281, 64 N. W. 972.

"As the facts set forth do not entitle plaintiff to an equitable action for the relief prayed as to the land conveyed by the later deed, no jurisdiction of the court is shown. 141 Fed. 610, 614, 617, 73 C. C. A. 260. It follows that the court is without jurisdiction to entertain this suit, and it must be dismissed for that reason. An order may be prepared accordingly."

From this it would appear that the suit was dismissed, not for any lack of jurisdiction of the court as a federal court, but because in the opinion of the District Court there was no equity in the bill, and that complainants' remedy, if any, was at law for damages. In Smith v. McKay, 161 U. S. 355, 16 Sup. Ct. 490, 40 L. Ed. 731, and Louisville Trust Co. v. Knott, 191 U. S. 255, 24 Sup. Ct. 119, 48 L. Ed. 159, the suits were dismissed for similar reasons, and in each of them an appeal direct to the Supreme Court was dismissed, upon the ground that the jurisdiction of the Circuit Court as a federal court was not involved, and in World's Columbian Exposition v. United States, 56 Fed. 664, 6 C. C. A. 58, where a motion to dismiss an appeal from the Circuit Court

to the Circuit Court of Appeals for like reasons was denied, and the appeal to that court upheld. The answer in this case as to the jurisdiction of the District Court only suggests that the court itself search the record to ascertain if it has jurisdiction of the controversy. This does not put in issue the jurisdiction of the court as a federal court within the meaning of section 238 of the Judicial Code. As the jurisdiction of the District Court as a federal court was not therefore specifically put in issue by the pleadings, or denied by the District Court, its jurisdiction as a federal court is not involved. See Morgan, Warden, etc., v. Ward et al., 224 Fed. 698, —— C. C. A. ——, filed May 17, 1915. The facts in the cases cited in the memorandum opinion of the District Court, except Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845, and Campbell v. Golden Cycle Mining Co., 141 Fed. 610, 73 C. C. A. 260, are such that we deem them inapplicable to the question now under consideration. Reference to the two excepted cases will be made later.

[2, 3] An ancillary bill or suit may, in a general way, be said to be a suit or proceeding in equity growing out of a prior suit in the same court, dependent upon, and instituted for the purpose either of impeaching or enforcing the judgment or decree in the prior suit, to the end that more complete justice may be done among all parties in interest; and the jurisdiction of such a suit is dependent upon the jurisdiction of the court of the prior suit. Minnesota Co. v. St. Paul Co., 2 Wall. 609, 633, 17 L. Ed. 886; Railroad Co. v. Chamberlain, 6 Wall. 748, 18 L. Ed. 859; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Campbell v. Golden Cycle Mining Co., 141 Fed. 610, 73 C. C. A. 260; Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Lamb v. Ewing, 54 Fed. 269, 4 C. C. A. 320; Lumley v. Wabash R. R. Co., 76 Fed. 66, 69, 22 C. C. A. 60; Coltrane v. Templeton, 106 Fed. 370, 374, 45 C. C. A. 328; and Lang v. Choctaw O. & G. R. Co., 160 Fed. 355, 87 C. C. A. 307. In Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154, above, this court, speaking by Judge Sanborn, said:

"Diversity of citizenship and the amount in controversy conferred jurisdiction upon the United States Circuit Court to render the original judgment against Tillett for his wrongful seizure and conversion of the cattle. Plenary power to enforce this judgment and to determine every controversy between the parties thereto and their successors in interest which conditioned that enforcement inhered in, and was a necessary part of, its jurisdiction. * * * Nor was the right of the complainant to invoke this jurisdiction conditioned by the existence of a federal question or of diversity of citizenship or of the amount in controversy. A bill in equity dependent upon a former action of which the federal court had jurisdiction may be maintained, in the absence of either of these attributes: (1) To aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein; or (3) to enforce or obtain an adjudication of liens upon, or claims to property in the custody of the court in the original suit. Such a dependent suit is but a continuation in a court of equity of the original suit, to the end that more complete justice may be done."

And in Campbell v. Golden Cycle Mining Co., 141 Fed. 610, 73 C. C. A. 260, he said:

"A bill to construe orders and decrees in a former suit in equity is a dependent bill, and may be sustained against those who claim under, or are

interested in, the orders or decrees whose interpretation is sought"—citing many cases.

And see 2 Street's Fed. Eq. § 1228 et seq.

Because the facts in Campbell v. Golden Cycle Mining Co. were held not to come fully within the rules announced therein is no reason why they should not be observed in a case that does.

In Freeman v. Howe et al., 24 How. 450, the court, at page 460 (16 L. Ed. 749), said of Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845, that:

It "deserves, perhaps, a word of explanation. It would seem, from a remark in the opinion, that the power of the court upon the bill was limited to a case between the parties to the original suit. This was probably not intended, as any party may file the bill whose interests are affected by the suit at law."

And the Supreme Court has many times so held in later cases. Dunn v. Clarke does not, therefore, hold that the failure to allege or show the citizenship of the parties to this suit is fatal to the jurisdiction of the District Court, if that was or is the purpose of citing it.

The defendant railroad companies were not made parties to the foreclosure suit for the reason (probably) that when it was commenced they were not disputing the right of either Childs or Ferguson to the use of the wagon road along the right of way, and the crossings over the railroad, as they had been maintaining both for many years; but while that suit was pending, and on June 7, 1901, the defendant Omaha & Southwestern Railroad Company obtained from Childs a release of his rights under the right of way deed of 1872, and also a quitclaim deed to a strip of land 100 feet wide immediately south of the original right of way, upon which it reconstructed or rebuilt its railroad, closed the crossings over the tracks, and denied to Ferguson, the executors of his will, and the devisees thereunder the right to use the wagon road and the crossings, and thus prevented them from passing from one part of their lands to other parts thereof. As the rights so claimed by the railroad companies were acquired by them subsequent to the Ferguson mortgage and while the foreclosure suit was pending, Ferguson in his lifetime might undoubtedly have brought the defendants into that suit by supplemental bill and had their rights under the deed of June, 1901, adjudicated and determined therein. The plaintiffs, as the successors in interest in his estate, may by this proceeding have the defendants' rights under that deed determined and adjudicated upon the merits; and this is what is sought by the present suit. That it is ancillary to and a continuation of the foreclosure suit we have no doubt. The court below therefore erred in dismissing the suit for the alleged want of jurisdiction to determine the controversy, and in refusing to determine the case upon the merits. Its decree must therefore be reversed.

[4] The appellants ask, in the event that this court shall sustain the appeal, that it then consider and determine the case upon the merits, though the lower court did not do so. When the entire record of a cause, including all the testimony therein, is before an appellate court upon appeal in equity, such appellate court may consider the

case upon the merits, and either enter a final decree, or remand the cause to the lower court, with directions to do so, though the lower court has not considered the merits. This case is of that character. It was commenced in the court below in February, 1907. Testimony upon the merits was taken by both parties, all of which is in the record before us, and there is but little dispute therein. The merits have been fully argued before us by the counsel for the respective parties, and there appears to be no reason why we should not determine the case upon its merits and finally dispose of it; for to remand the cause to the court below to determine the merits would only further prolong this litigation unnecessarily. The case is unlike Railway Co. v. Tompkins, 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417, and like cases. The case will therefore be determined upon its merits.

The testimony shows that a small portion of the right of way of the railroad under the deed of 1872, upon which the wagon road was constructed and maintained by the railroad company for many years, was washed away one or more times by the ordinary action of the waters of the Missouri river, and restored by the railroad company prior to about 1899. It was again washed away about that year, and the railroad company then instituted condemnation proceedings under the Nebraska statute against Childs and Everard D. Ferguson for an enlargement of its right of way, so as to enable it to remove the railroad tracks nearer to the base of the bluff at the point in question; but upon acquiring its quitclaim deed from Childs in June, 1901, it discontinued the condemnation proceedings, reconstructed its roadbed, and laid its tracks thereon a few feet nearer to the bluff, and then refused to restore the wagon road and the two crossings over the tracks at each end of what had been such wagon road, and its contention, among others, is that, inasmuch as the ground at one point over which the wagon road was constructed has been washed away by the action of the waters of the river, it is relieved from rebuilding and maintaining the wagon road and the crossings over the tracks for the benefit of Childs and his grantees, upon the principle that, under a contract which by the intention of the parties requires for its performance the continued existence of a specific subject-matter, the destruction in toto of that subject-matter will relieve from the performance of the contract, unless the parties have assumed by the contract the risk of its destruction, or one of them has undertaken therein for its continued existence. Many cases are cited in support of this contention, one of which mainly relied upon is Waite v. O'Neil et al. (Sixth Circuit Court of Appeals) 76 Fed. 408, 22 C. C. A. 248, 34 L. R. A. 550.

We think the principle of this and others of the cited cases is inapplicable to the facts of the case before us. In that case Mrs. Waite, the complainant, was the owner of certain lots in the city of Memphis, Tenn., fronting upon the Mississippi river. These lots, or rather the river front and landing in front of them, she leased to O'Neil & Co. for a term of years at a specified rental. The subject-matter of the lease is described in the record as "the river front and landing in front of certain described lots, in the city of South Mem-

phis, with ample space for a roadway along the landing in all stages of the water and no more," the said landing to be used by the lessee for the mooring, storing and unloading of coal, wood, and ice barges or boats. The rent was paid by the lessee to a certain date, when the landing was totally destroyed by the giving way of certain government works across the river from and above Memphis, whereby an unusual and uncontrollable current of water was thrown directly against the river bank in front of Mrs. Waite's property abutting upon the river, and the places contiguous thereto above and below such landing, thus destroying completely the landing which was the subject-matter of the lease. The lessees refused to pay the rent after the destruction of the property, and the suit was brought to recover the unpaid rental and to require the lessees to perform their undertaking in the lease to return the property to Mrs. Waite at the end of the term in as good condition as it was when the lease was made. It was held by the Court of Appeals that this destruction of the subject-matter of the lease by this unusual and uncontrollable action of the waters of the river relieved the lessees from the payment of the rent after the destruction of the property, and that the restoration of the property to its condition at the time of the lease was impossible, owing to the irreparable nature of the damages caused by the action of the waters. This short abridgment or statement of the facts shows the inapplicability, we think, of that case upon its facts to the case before us.

[5] It is a fundamental rule in the construction of all contracts that they are to be construed in reference to their subject-matter, the situation of the parties, and of the subject-matter of the contract at the time of their making. Nash v. Towne, 5 Wall. 689, 18 L. Ed. 527; Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; Merriam v. United States, 107 U. S. 437, 2 Sup. Ct. 536, 27 L. Ed. 531; United States v. Appleton, 1 Sumn. 492 [24 Fed. Cas. No. 14,463].

[6] In the case before us Charles Childs was, in 1872, the owner of a tract of land, some 800 acres, bordering upon the westerly bank of the Missouri river, south of Omaha, Neb. This tract of land was used by him as a whole, though it was divided or separated by a steep bluff near the river bank, rising abruptly 100 feet or more above the river and extending back from the river for some distance, thus dividing the land into two parts. At the base of this bluff was a narrow strip of land extending a quarter of a mile or so along the bluff between it and the river, which afforded Childs the only means of access from his land on one side of the bluff to that upon the other side. The Omaha & Southwestern Railroad Company, desiring to run its railroad through this land and along the river bank at the base of this bluff, obtained from Childs in January, 1872, the right of way deed of that date, to which reference has hereinbefore been made, and subsequently built its railroad upon that right of way along the base of this bluff, and has since maintained the same at such point, thus occupying with its railroad and tracks the only means whereby Childs and his grantee, Ferguson, and these plaintiffs, as the heirs of Ferguson, may pass from one part of their land to other parts thereof.

This deed of 1872 contains the provisions and reservations hereinbefore set forth, among which is that, if the railroad company shall permanently abandon the route through said tract of land, then the right of way granted shall revert to and become revested in the said grantor, his heirs or assigns; that the grantor reserves the right to cross the railroad track and travel with teams or otherwise along the right of way parallel with the tracks; and finally it is expressly agreed:

"That the grantees are to make and keep in repair a wagon road parallel with the tracks of the railroad, and two permanent crossings over the tracks for teams at points to be designated by the grantor, and the grantor reserves the right to make other crossings and use them, not interfering, however, with the operation of the railroad."

There is no doubt that the reservations in this deed, and the agreement therein of the railroad company "to build and keep in repair a wagon road along the right of way, and two permanent crossings over the tracks" at points to be designated by Childs, were a part of the consideration for that deed, and the principal inducement for its execution, and that such reservations and the agreement of the railroad company are appurtenant to the land of Childs, in the nature of covenants running with the land which inure to the benefit of Childs' grantees upon the conveyance of the land by him, and bind the railroad company to build and maintain the wagon road and the two crossings over the tracks for the benefit of Childs' grantees. Smith v. Garbe, 86 Neb. 91, 124 N. W. 921, 136 Am. St. Rep. 674, 20 Ann. Cas. 1209; Ballinger v. Kinney, 87 Neb. 342, 127 N. W. 239; Mitchell v. Weston, 91 Miss. 414, 45 South. 571, 15 L. R. A. (N. S.) 833 and note, 124 Am. St. Rep. 706; People v. Plainfield Road Co., 105 Mich. 9, 62 N. W. 998. And see Sexauer v. Wilson, 136 Iowa, 357, 113 N. W. 941, 14 L. R. A. (N. S.) 185, 15 Ann. Cas. 54, and note. And this is a local rule of property that will ordinarily be observed by the federal courts sitting in Nebraska, unless it should conflict with or impair the efficiency of some provision of the federal Constitution or a federal statute, or some rule of general commercial law, which we do not perceive that it does. Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909, and Hinde v. Vattier, 5 Pet. 398, 401, 8 L. Ed. 168.

Of course the railroad tracks cannot rightly be removed from the right of way, nor the operation of the railroad suspended; but the appellants ask only that the railroad company be required to perform its agreement "to build and maintain a wagon road along the railroad right of way, parallel with its tracks," for the benefit of the appellants, as the heirs of a grantee of Childs; and we perceive nothing in the situation of the parties or in the subject-matter of this contract that will prevent a court of equity from requiring it to do so. Having unconditionally contracted to maintain the wagon road along the right of way, and two crossings over its tracks, it is not relieved from performing its undertaking because a part of its roadbed where the wagon road was constructed has been damaged or washed away by the ordinary action of the waters of the river without its fault; it not having protected itself by its contract against

such damage, which was to be reasonably expected by all who are familiar with the action of the waters of the Missouri river. Dermott v. Jones, 2 Wall. 1, 7, 17 L. Ed. 762; Railway Co. v. Hoyt, 149 U. S. 1, 14, 13 Sup. Ct. 779, 37 L. Ed. 625; Mitchell v. Weston, 91 Miss. 414, 45 South. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706, above. And specific performance of such an undertaking will be decreed in equity. Joy v. City of St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843; Union Pacific Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 600, 16 Sup. Ct. 1173, 41 L. Ed. 265; Gloe v. Railway, 65 Neb. 680, 91 N. W. 547.

In Union Pacific Co. v. Chicago, etc., Railway Co., 163 U. S. at page 600, 16 Sup. Ct. at page 1187 (41 L. Ed. 265), above, the Supreme Court, speaking by Mr. Chief Justice Fuller, said:

"The jurisdiction of courts of equity to decree the specific performance of agreements is of a very ancient date, and rests on the ground of the inadequacy and incompleteness of the remedy at law. Its exercise prevents the intolerable travesty of justice involved in permitting parties to refuse performance of their contracts at pleasure by electing to pay damages for the breach."

And at page 427 in Stuyvesant v. New York City, 11 Paige (N. Y.) 414, Chancellor Walworth states what he regards as the true rule on the subject of decreeing the specific performance of contracts as follows:

"Where, from the nature of the relief sought, performance in specie will alone answer the purposes of justice, this court will compel a specific performance, instead of leaving the complainant to a remedy at law, which is wholly inadequate. The court has jurisdiction, therefore, to compel the specific performance by the defendant of a covenant to do certain specified work, or to make certain improvements or erections upon his own land, for the benefit of the complainant, as the owner of the adjoining property, who has an interest in having such work done or such improvements or erections made, and where the injury to the complainant, from the breach of the covenant, is of such a nature as not to be capable of being adequately compensated in damages."

In Mitchell v. Weston, above, the court said:

"There is a long line of cases, both in England and this country, which settle the proposition that an unconditional express covenant to repair or keep in repair is equivalent to a covenant to rebuild, 'and binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger,' and that, while an act of God will excuse the nonperformance of a duty created by law, it will not excuse a duty created by contract"—citing many cases.

In Gloe v. Railway Co., 65 Neb. 680, 91 N. W. 547, the defendant procured from the plaintiff a conveyance of the right of way, covenanting as part consideration therefor to make two under-track crossings to accommodate the plaintiff in the use of his land. The court said:

"It [the railroad company] has used the right of way and constructed its roadbed across the premises. The evidence is conclusive that the roadbed is so constructed that the plaintiff has to drive along the track a mile or more before he can cross it, and then return upon the other side to reach his own premises. Without these under-track crossings, his land is greatly depreciated in value, and he is put to serious inconvenience in working the same. He is irreparably injured in the enjoyment of his property, unless the defendant performs its agreement, and affords him these under-track crossings for which

he contracted in consideration of conveying away his land. Having taken his land and appropriated it to a quasi public use, the court will compel a performance of the agreement that induced the conveyance."

In the case before us the actual value of the land granted as the right of way by the deed of 1872 is small as compared with the damages and inconvenience to the owner of the land, because of dividing his estate into two parts without means of access from one part thereof to the other, and for which adequate compensation would be difficult if not impossible of ascertaining at law. Specific performance of the contract is therefore the only complete remedy. Whether or not the destruction of that portion of the railroad bed at the base of the bluff, where the wagon road was constructed, is within the right of way described in the deed of 1872, may not be entirely clear under the testimony. But we deem this immaterial, for the railroad companies still retain their rights under the deed of 1872, and continue to use at least a part of that right of way for its roadbed at this point, and exclude the plaintiffs from using any part of the strip of land at the base of the bluff as a passageway from one part of their land to other parts thereof; and so long as they do this, they are bound by the express terms of the contract to maintain a wagon road along the base of the bluff, parallel with its tracks, and the two crossings over the same for the benefit of the owners of the land, as it did for many years after building its railroad upon such ground. By a proper retaining wall the railroad company can repair, as it has done before, the small portion of its railroad bed damaged by the ordinary action of the waters, and this it should be required to do, if necessary to perform its undertaking under the deed of 1872.

Some other matters are urged upon us by the railroad companies as a reason for denying the relief asked by the appellants; but, without referring to them in detail, it must suffice to say that we have carefully considered all of them, and reach the conclusion that the plaintiffs are entitled to a decree that the railroad company, or companies, shall be required to restore the wagon road upon the right of way, parallel with the tracks, and two crossings over the same, and maintain them in the future as appurtenant to the plaintiff's land, and for the benefit of the owners thereof.

We do not understand the railroad company to claim that under the quitclaim deed from Childs of June 7, 1901, procured pending the foreclosure proceedings, that it has any additional rights against the appellants, other than it would have under the deed of 1872, for at the time of that deed Everard D. Ferguson was in possession of the land, and the foreclosure suit was pending; but, if it does, we are of the opinion that its claim cannot be upheld.

The decree of the District Court is therefore reversed, and the cause remanded to that court, with directions to enter a decree for the appellants as herein indicated, at the costs of the appellees. It is accordingly so ordered.

Reversed and remanded, with directions.